UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MOHAMMED EREIKAT,

       Plaintiff,

   v.

MICHAEL & ASSOCIATES, PC,

       Defendant.

Case No.  14-cv-05339-JSC

**ORDER RE MOTION TO AMEND COMPLAINT & MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 24, 26

      Plaintiff Mohammed Ereikat ("Plaintiff") brought this action against Defendant Michael & Associates, PC ("Defendant") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, after Defendant identified Plaintiff's wife, Manal Ereikat, as "aka Mohammed Ereikat" in the caption of an action to recover a debt of Plaintiff's wife.  Now pending before the Court is Defendant's motion for summary judgment (Dkt. No. 26) and Plaintiff's motion for leave to file an amended complaint (Dkt. No. 24).  Having considered the parties' submissions, and having had the benefit of oral argument on July 9, 2015, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motion for leave to file an amended complaint.

**I.**      **MOTION FOR SUMMARY JUDGMENT**

     **A.**     **Summary Judgment Evidence**

      The following facts are based on the summary judgment evidence before the Court and documents of which the Court takes judicial notice.[1]  Defendant Michael & Associates is a law

---

[1] Defendant requests that the Court take judicial notice of six documents in connection with its motion for summary judgment.  (Dkt. No. 26-3.)  Exhibits A, D, E, and F are all documents filed on the public docket in San Mateo County Superior Court.  It is well established that a "court may take judicial notice of court filings and matters of public record[.]"  *Reyn's Pasta Bella, LLC v.*

United States District Court
Northern District of California

firm that engages in debt collection on behalf of several clients, including American Express. (Dkt. No. 26-1 ¶ 4.)  Plaintiff and his wife Manal live in San Bruno, California.  (Dkt. No. 26-2 at 26-27.)  In May 1994, Manal applied for and was issued an American Express credit card.  (Dkt. No. 26-1 ¶ 6; *see* Dkt. No. 26-2 at 13.)[2]  Manal was the "basic cardmember" on the account.  (Dkt. No. 26-1 ¶ 6.)  Plaintiff was a supplemental cardholder on the account.  (*Id.*; *see also* Dkt. No. 26-2 at 33.)  Both Plaintiff and Manal used their cards to make purchases.  (*See* Dkt. No. 26-2 at 33.)

        At some point, Manal failed to make the required monthly payments on the credit card account.  (*See* Dkt. No. 26-1 ¶ 6.)  In February of 2014, American Express placed the debt with Defendant for collection and suit.  (*Id.*)  When the debt was placed with Defendant, the outstanding balance on the account was $10,643.97.  (*See id.* ¶ 11 & Ex. A.)  At that time, Defendant ran a credit report for Manal to determine her current address and whether she had used any other names, verify her date of birth and social security number, and find out whether there were any liens or credit lines against her.  (*Id.* ¶ 7.)  Defendant's practice is to obtain a Transunion credit report when deciding whether to bring suit, and it did so for Manal.  (*Id.*)  The Transunion credit report for Manal revealed that she was also known as "Mohammed Ereikat."  (*Id.* ¶ 8; *see also* Dkt. No. 26-2 at 9-10.)  Manal testified that years earlier she had opened joint credit card accounts with her husband's name because she had not yet established her own credit, but had never used the name Mohammed to apply for a loan or open a credit card or for any other purpose. (Dkt. No. 26-2 at 10-12; Dkt. No. 31-8 at 5.)

---

*Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006).  Thus, the Court takes judicial notice of Exhibits A, D, E and F.  Exhibit C is the redacted Transunion Credit Report for Manal Ereikat, which was filed in connection with the State Action and was authenticated and admitted during Manal's deposition.  The Court will judicially notice the document solely for the purpose of noting whose name appears on the report, not for the truth of the matter asserted therein—*i.e.*, that Manal actually owed over $10,000 and was overdue on certain accounts.  Exhibits 1 and 2 to the request for judicial notice are printouts from state court websites providing instructions for how to name a defendant in a state lawsuit.  (*See* Dkt. Nos. 26-3 at 7-12.)  "Documents available through government agency websites are often considered appropriate for judicial notice as documents in the public record not reasonably subject to dispute."  *Musgrave v. ICC/Marie Callendar's Gourmet Prods. Div.*, No. 14-CV-02006, 2015 WL 510919, at *3 (N.D. Cal. Feb. 5, 2015) (collecting cases).  Thus, the Court judicially notices these exhibits.

[2] Page numbers throughout refer to those that the Court's electronic filing system automatically assigns.

United States District Court
Northern District of California

1   Using the information from the Transunion credit report, Defendant filed a debt collection

2   lawsuit in San Mateo County Superior Court, captioned *American Express Centurion Bank, a*

3   *Utah State Chartered Bank v. Manal Ereikat, aka Manal J. Ereikat, aka Mohammed Ereikat, an*

4   *individual*, Case Number CLJ 527880.  (Dkt. No. 26-1 ¶ 11.)  The State Action alleged that Manal

5   Ereikat applied for and was issued an American Express card and incurred a debt in the amount of

6   $10,643.97.  (Dkt. No. 26-1 ¶ 11; Dkt. No. 26-1 at 8-11 ("State Action complaint").)  The State

7   Action complaint contained allegations pertaining to Manal's American Express credit card

8   account and debt incurred; appended to the State Action complaint were account statements listing

9   only her name.  (*See* Dkt. No. 26-1 at 8-19.)  The State Action complaint alleged all causes of

10  action against a "Manal Ereikat, aka Manal J. Ereikat, aka Mohammed Ereikat, an individual."

11  (*See id.*)  The complaint was devoid of references to Plaintiff or his personal liability; similarly,

12  the pages of billing statements attached thereto referred solely to Manal Ereikat, not Plaintiff.  (*Id.*

13  at 8-19.)

14  Defendant served the State Action complaint solely on Manal, not Plaintiff.  (Dkt. No. 26-

15  1 ¶¶ 15-16; *see also* Dkt. No. 26-2 at 14 (Manal recalling service of the State Action complaint);

16  *id.* at 28-29 (Plaintiff testifying that he was never served with the State Action complaint).)  The

17  case report from the Superior Court website lists a single defendant: Manal Ereikat.  (Dkt. No 26-2

18  at 39; *see also* Dkt. No. 26-1 ¶ 20.)  Manal retained counsel and filed a responsive pleading in the

19  State Action; Plaintiff did neither.  (*See* Dkt. No. 26-2 at 32, 39.)  Manal, and not Plaintiff, signed

20  a retainer and paid that attorney to represent her in the State Action.  (Dkt. No. 31-13 at 5.)[3]

21  Plaintiff testified that when his wife showed him the State Action complaint, he thought he

22  was a defendant because his name was in the caption.  (Dkt. No. 31-10 at 5; *see also* Dkt. No. 31-1

23  ¶¶ 4-5.)  Plaintiff further testified that after he spoke with the attorney his wife hired to represent

24  her in the state action, he knew he was not being sued.  (Dkt. No. 26-2 at 30-31; Dkt. No. 31-10 at

25  5.)

26

27  _____

28  [3] The Court declines to consider the Declaration of Manal Ereikat's attorney in the State Action, Tamara Trawick, as the only relevant evidence from the Trawick Declaration is hearsay that describes Plaintiff's out-of-court statements to her.  (Dkt. No. 31-14 ¶¶ 5-8.)

United States District Court
Northern District of California

1    In October of 2014, Manal Ereikat entered into a settlement agreement with American

2  Express and signed a Stipulation for Conditional Entry of Judgment in the State Action.  (Dkt. No.

3  26-2 at 17-18, 41-44.)  In November of 2014, Manal signed an amended Stipulation for

4  Conditional Entry of Judgment, which was filed on the docket in the State Action.  (*Id.* at 18-19,

5  46-52.)

6    Plaintiff filed the instant complaint in December 2014.  (Dkt. No. 1.)  Plaintiff alleges that

7  Defendant's inclusion of his name on the case caption violates the FDCPA.  In short, Plaintiff

8  contends that Defendant knew or should have known that Plaintiff was not liable for his wife's

9  debts, and that by naming Plaintiff as a defendant in the State Action, Plaintiff used false,

10  deceptive, and misleading representations in connection with collection of debt, falsely

11  represented the character of the debt, took action against Plaintiff that Defendant was not legally

12  entitled to take, used false representation and deceptive means to collect the debt, and attempted to

13  collect an amount not authorized by law in violation of 15 U.S.C. §§ 1692e, e(2)(A), e(1), 1692f,

14  and 1692f(1).  (*Id.* ¶¶ 27-33.)  Plaintiff brings a single count alleging violations of the FDCPA

15  seeking actual damages, statutory damages, and attorneys' fees and costs.  (*Id.* ¶¶ 34-36.)

16    **B.    Legal Standards**

17      1.    <u>Legal Standard for Summary Judgment</u>

18    Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

19  to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc.

20  56(a).  The Court must draw "all reasonable inferences [and] resolve all factual conflicts in favor

21  of the non-moving party."  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

22  A fact is material if it "might affect the outcome of the suit under the governing law," and an issue

23  is genuine if "a reasonable jury could return a verdict for the non-moving party."  *Anderson v.*

24  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There can be "no genuine issue as to any material

25  fact" when the moving party shows "a complete failure of proof concerning an essential element

26  of the nonmoving party's case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

27    Defendant, as the moving party, has the burden of producing evidence negating an

28  essential element of each claim on which it seeks judgment or showing that Plaintiff cannot

4

1    produce evidence sufficient to satisfy her burden of proof at trial. *Nissan Fire & Mar. Ins. Co.,*

2    *Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once Defendant meets that burden,

3    Plaintiff, as the non-moving party, must show that a material factual dispute exists. *California v.*

4    *Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).  Allegations alone are not sufficient to meet

5    Plaintiff's burden; instead, Plaintiff must submit admissible evidence. *Devereaux v. Abbey*, 263

6    F.3d 1070, 1076 (9th Cir. 2001).  Plaintiff's evidence must be such that a reasonable trier of fact

7    could return a verdict in his favor, *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th

8    Cir. 1995), and the Court "is not required to comb the record to find some reason to deny a motion

9    for summary judgment[,]" *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir.

10   1988).

                           2.    <u>Legal Standard for FDCPA Cases</u>

11

12          The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt

13   collectors, to insure that those debt collectors who refrain from using abusive debt collection

14   practices are not competitively disadvantaged, and to promote consistent State action to protect

15   consumers against debt collection abuses." 15 U.S.C. § 1692(e).  Congress passed the FDCPA in

16   light of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices

17   by many debt collectors" that it found "contribute to the number of personal bankruptcies, to

18   marital instability, to the loss of jobs, and to invasions of individual privacy." *Wade v. Regional*

19   *Credit Ass'n*, 87 F.3d 1098, 1099 (9th Cir. 1996) (citing 15 U.S.C. § 1692(a)).  "[T]he FDCPA

20   should be construed liberally to effect its remedial purpose." *Rouse v. Law Offices of Rory Clark*,

21   603 F.3d 699, 705 (9th Cir. 2010).

22          To prevail on a claim for violation of the FDCPA, a plaintiff must establish that (1) the

23   plaintiff is a consumer, (2) who was the object of a collection activity arising from a debt, (3) the

24   defendant is a debt collector, and (4) the defendant violated a provision of the FDCPA. *See*

25   *Turner v. Cook*, 362 F.3d 1219, 1227-28 (9th Cir. 2004).  The FDCPA is a strict liability statute,

26   so the debt collector need not knowingly and intentionally violate its provisions, though intent is

27   relevant to determination of damages. *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162,

28   1176 (9th Cir. 2006) (citations omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In considering whether a statement in a debt collection communication violates the

2    FDCPA, courts apply the "least sophisticated debtor standard." *Guerrero v. RJM Acquisitions,*

3    *LLC*, 499 F.3d 926, 934 (9th Cir. 2007).  "An FDCPA plaintiff need not even have actually been

4    misled or deceived by the debt collector's representation; instead, liability depends on whether the

5    *hypothetical* 'least sophisticated debtor' likely would be misled." *Tourgeman v. Collins Fin.*

6    *Servs., Inc.*, 755 F.3d 1109, 1117-18 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en*

7    *banc* (Oct. 31, 2014).  "The standard is designed to protect consumers of below average

8    sophistication or intelligence, or those who are uninformed or naïve, particularly when those

9    individuals are targeted by debt collectors." *Gonzalez v. Arrow Fin. Servs., LLC*, 660 F.3d 1055,

10   1062 (9th Cir. 2011) (internal quotation marks and citation omitted).  "At the same time, the

11   standard preserv[es] a quotient of reasonableness and presume[s] a basic level of understanding

12   and willingness to read with care."  *Id.* (internal quotation marks and citation omitted).  "The

13   FDCPA does not subject debt collectors to liability for 'bizarre,' 'idiosyncratic,' or 'peculiar'

14   misinterpretations.  *Id.*  Whether a communication would confuse the least sophisticated debtor is

15   a question of law for the court to decide*. Id.* at 1061 & n.3 (citation omitted); *see also Tourgeman*,

16   755 F.3d at 1118 (holding that the "least sophisticated debtor" standard "inquiry is objective and is

17   undertaken as a matter of law."); *Terren v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997) (same).

18       Only false and misleading statements that are material will trigger a violation of the

19   FDCPA; such statements must be "genuinely misleading" such that they "may frustrate the

20   consumer's ability to intelligently choose his or her response to the collector's communication."

21   *Donohue v. Quick Collect, Inc.*, 592 F.2d 1027, 1033-34 (9th Cir. 2010); *see also Tourgeman*, 755

22   F.3d at 1119 ("[i]n assessing FDCPA liability," courts are concerned "with genuinely misleading

23   statements that may frustrate a consumer's ability to intelligently choose his or her response")

24   (internal quotation marks and citation omitted).

25       **C.     Discussion**

26       Plaintiff contends that Defendant committed six FDCPA violations—all arising under

27   Sections 1692e and 1692f —in connection with the State Action to collect Manal's debt.  Section

28   1692e of the FDCPA prohibits debt collectors from "using any false, deceptive or misleading

representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692f proscribes "unfair or unconscionable means to collect or attempt to collect any debt." The various subsections Plaintiff alleges are more specific examples of misleading representations or unfair means of collection. All of the alleged violations boil down to the same question: whether including a name as an "aka" on the caption of a debt collection complaint would lead a person with the same name to believe that he was being sued for the debt should he become aware of the action and is therefore misleading under the FDCPA. At oral argument, Plaintiff clarified that his claim is limited to situations where, as here, the "aka" name is the same name as a person who is a supplemental cardholder on the delinquent account. Put another way, Plaintiff contends that Defendant's identification of Plaintiff's name in the case caption as an "aka" for the true debtor Manal created an ambiguity about who was being sued, and led Plaintiff—and therefore would lead the least sophisticated consumer—to believe that he was being sued even though he could not be held liable for the debt. Defendant, for its part, insists that even the "least sophisticated" debtor would know that an "aka" is merely an alias, such that only one individual—Manal—was the defendant in the suit, so there was nothing false or misleading about the State Action and therefore no FDCPA violation.

Neither party cites any authority that is entirely on point. Defendant argues generally that it cannot be held liable for an FDCPA violation because (1) there was no misrepresentation given that Mohammed as an alias for Manal was an accurate statement because it was listed as such on her Transunion credit report and (2) a name listed after "aka" is properly an alias, as the Superior Court recognized here. (*See* Dkt. No. 26 at 15-16, 22.) But this argument misses the mark because (1) even correct information can lead to an FDCPA violation if it is misleading to the unsophisticated debtor, *see Gonzalez*, 660 F.3d at 1062 ("[A] literally true statement can still be misleading[.]" (citations omitted)), and (2) the measure is not what Defendant intended or what the state court recognized, but how the least sophisticated consumer would react, *see id.* at 1064.

But Defendant is nonetheless entitled to summary judgment because the Court concludes that the least sophisticated consumer in Plaintiff's position would not be misled. First, it is undisputed that Defendant did not target Plaintiff for collection of a debt. The complaint was not

United States District Court
Northern District of California

1    served on him.  No collection letter was sent to him.  No telephone call was made to him.  He

2    became aware of the complaint only because his wife showed it to him.  Second, the State Action

3    complaint unambiguously identifies the name "Mohammed Ereikat" as an "aka" for the named

4    plaintiff, Manal Ereikat.  Third, attached to the complaint were account statements that

5    unambiguously identified Manal, and only Manal, as the account holder.   Under these

6    circumstances, the complaint caption is not subject to the interpretation urged by Plaintiff.

7         Plaintiff's insistence that the Court must deny summary judgment because he testified that

8    he was misled is unpersuasive.  In effect, Plaintiff urges the Court to hold that when an FDCPA

9    plaintiff contends that he was misled, it always presents a jury question.  Not so.  Whether a

10   communication would confuse the least sophisticated consumer is a question of law for the court

11   to decide.  *See Gonzalez*, 660 F.3d at 1061 & n.3 (citation omitted).  Even accepting as true

12   Plaintiff's testimony that upon his review of the State Action caption he believed that Defendant

13   sought to collect the debt from him, such evidence fails to persuade the Court that under the

14   undisputed circumstances here use of the "aka" is, as legal matter, misleading.[4]

15        Plaintiff's argument to the contrary is unavailing.  In his briefing and at oral argument,

16   Plaintiff repeatedly cites cases that are factually distinguishable.  For example, Plaintiff relies on

17   cases in which collection notices were deemed misleading due to confusing information about the

18   *creditor.  See, e.g.*, *Tourgeman*, 755 F.3d at 1120-23 (finding a sufficiently alleged FDCPA

19   violation where the defendant misidentified the original creditor in collection letters sent to

20   plaintiff and in the state action filed against him); *Heathman v. Portfolio Recovery Assocs., LLC*,

21   No. 12-CV-515-IEG (RBB), 2013 WL 3746111, at *3 (S.D. Cal. July 15, 2013) (finding an

22   FDCPA violation where the defendant filed a collection action against the debtor in state court but

23   listed only the collection agency as the plaintiff and failed to identify the bank with which the

24

25   ───────────────────────
     [4] Plaintiff also testified that he knew that "aka" refers only to a single individual, that is, that a
26   name followed by an "aka" and then another name is only referring to a single person.  (Dkt. No.
     26-2 at 34.)  Such testimony casts doubt on his testimony that he was misled by the "aka" into
27   believing that he had been sued along with his wife.  But even disregarding this contradictory
     testimony, and accepting his testimony that he was misled as true, the Court is unpersuaded that
28   the complaint was unlawfully misleading.

United States District Court
Northern District of California

debtor initially opened a credit account rendering the debtor "unable to verify the debt purportedly owed, much less attempt to resolve that debt directly and extrajudicially"); *Becker v. Genesis Fin. Servs.*, No. CV-06-5037-EFS, 2007 WL 4190473, at *6 (E.D. Wash. Nov. 21, 2007) (finding an FDCPA violation where the defendant sent a collection notice to the debtor providing two different addresses where the debtor should send her payments, therefore making it confusing and misleading where she could cure her debt). Such is not the case here: the State Action complaint clearly identified the original creditor and the particular credit account, even listing the last four digits of Manal's account to make it clear. (*See* Dkt. No. 26-1 at 9.)

Plaintiff's reliance on *Dutton v. Wolhar*, 809 F. Supp. 1130 (D. Del. 1992), the only case Plaintiff cites that involves allegedly misleading information about the *debtor*, is equally misplaced. There, the debt collector sent the plaintiffs collection letters and actually named the plaintiffs as defendants in collection lawsuits—not merely as an "aka" in the case caption—to collect debts actually owed by other family members. *Id.* at 1136. The family members did not and had not resided at the plaintiff's residences, even though that is where the defendant sent the letters. The *Dutton* court granted summary judgment on several of the plaintiffs' FDCPA claims finding that an unsophisticated consumer would be misled to believe himself legally obligated to pay the family member's debt based on those actions. *Id.* at 1137. Defendant's identification of Manal with an "aka" in the State Action is not analogous: Plaintiff was not actually sued, not listed as a separate defendant, and not served with either collection letters or the State Action complaint in such a way that might lead an unsophisticated debtor to believe himself obligated for his wife's debt.

In short, merely having a name after an "aka" in a debt collection case caption that is the same name as someone other than the debtor does not give rise to FDCPA liability, even under the circumstances presented here—*i.e.*, when the person whose name is the same as the name listed as an alias is also a cardholder who used the card to make purchases. Plaintiff's argument is, at bottom, that a debt collector cannot use an "aka" in a case caption if the "aka" is the same name as someone close to the actual named plaintiff. There is no precedent for such a ruling and the Court declines to be first to so hold here.

In sum, Defendant's inclusion of a name as an alias for Manal in the caption of the debt collection action against Manal that is the same name as Plaintiff's did not constitute a "false, deceptive or misleading" representation in the collection of a debt or an "unfair or unconscionable collection practice" in violation of the FDCPA.  Accordingly, the Court GRANTS Defendant's motion for summary judgment.

## II.     MOTION FOR LEAVE TO AMEND

The proposed First Amended Complaint ("FAC") would add Plaintiff's wife, Manal, as a Plaintiff in this matter based on Defendant's continued debt collection practices against her from November 2014 through April 2015.  Specifically, the proposed FAC alleges that in November 2014, Manal resolved the State Action with Defendant by entering a Stipulation for Conditional Entry of Judgment ("Stipulation"), and that even though Manal made her stipulated payments, Defendant sought and obtained entry of judgment against her in April 2015, misrepresenting to the state court that Manal had failed to cure her default.  (*See* Dkt. No. 24-3 ¶¶ 33-40.)

Federal Rule of Civil Procedure 15 governs amendments to pleadings.  Rule 15(a) provides in relevant part that a "court should freely give leave [to] amend when justice so requires."  Fed. R. Civ. P. 15(a).[5]  The Ninth Circuit has long recognized that this policy is "to be applied with extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Under this rule, "leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) (citing *Foman v. Davis,* 371 U.S. 178 (1962)). If any of these factors justifies denying an opportunity to amend, the court has discretion to foreclose amendment.  *See Foman*, 371 U.S. at 182; *see also California v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004) (noting that the decision to grant or deny leave to amend rests in the

---

[5] Because Plaintiff seeks to include new facts that occurred after the filing of the operative complaint, his motion sounds more in Rule 15(d)—motions to supplement the pleadings—than Rule 15(a).  *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998) (internal quotation marks and citation omitted).  However, this is a distinction without a difference, as the legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as the standard for a Rule 15(a) motion to amend.  *See Yates v. Auto City 76*, 299 F.R.D. 611, 614 (N.D. Cal. 2013); *Candler v. Santa Rita Cnty. Jail Watch Commander*, No. C 11–1992 CW (PR), 2013 WL 5568248, at *1 (N.D. Cal. Oct. 9, 2013) (internal quotation marks and citation omitted).

court's discretion).  However, prejudice weighs most heavily in the analysis.  *See Johnson*, 975 F.2d at 609; *see also In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013).

Under the circumstances presented here, Plaintiff's request to amend is timely, is not brought in bad faith, and is not futile.  However, amendment would unduly prejudice Defendant, and prejudice weighs most heavily in the analysis.  *See Eminence Capital, LLC*, 316 F.3d at 1052 (noting that prejudice "carries the greatest weight" in assessing whether to allow amended pleadings).  Undue prejudice exists where the claims sought to be added "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, *at a late hour*, an entirely new course of defense."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1999).  Such is the case here, where allowing the amendments after a successful bid for summary judgment would require Defendant to start from scratch defending Manal's claims when they had already fully briefed, argued, and obtained summary judgment.  Moreover, while the parties never engaged in formal discovery, they did engage in sufficient informal discovery to get to summary judgment—including the deposition of Manal, which would have to be redone.  Under these circumstances, the prejudice that would result from permitting amendment is undue.  *See Chau Van v. City of Oakland*, No. 13-cv-00992-JCS, 2015 WL 995127, at *15 (N.D. Cal. Mar. 4, 2015) (denying leave to amend finding undue prejudice to the defendant where the defendant had already filed a summary judgment motion and where addition of new parties would require new discovery).  Plaintiff's argument to the contrary—that Manal will be prejudiced if leave to amend is not granted because she will have to pay the filing fee—is unavailing, as the Court cannot find prejudice in requiring Manal to comply with requirements that all Plaintiffs must follow.

The Court therefore declines to exercise its discretion to grant Plaintiff leave to amend the complaint to bring in a brand new plaintiff asserting brand new claims against Defendant.[6]  The

---

[6] This result also comports with Rule 20, which is relevant here because Plaintiff's proposed amendments is effectively a request to join Manal as a party to this action.  Rule 20(a) provides that "[p]ersons may join in one action as plaintiff if . . . (A) they assert any right to relief jointly,

1    Court therefore DENIES Plaintiff's motion to amend.

2                                    **CONCLUSION**

3          For the reasons described above, the Court GRANTS Defendant's motion for summary

4    judgment and DENIES Plaintiff's motion for leave to file an amended complaint.  Judgment shall

5    be entered accordingly.

6          This Order disposes of Docket Nos. 24 and 26.

7          **IT IS SO ORDERED.**

8    Dated:  July 21, 2015

9

10                                                      _Jacqueline Scott Corley_

11                                                      JACQUELINE SCOTT CORLEY
                                                        United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  _____

27  severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or
    series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs
28  will arise in the action."  As Plaintiff has no pending claims, neither of these prongs is met.

United States District Court
Northern District of California